IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LEONARD G. HOROWITZ, an individual; SHERRI KANE, an individual; ROYAL BLOODLINE OF DAVID, a dissolved corporation sole,<br><br>        Plaintiffs,<br><br>    vs.<br><br>STEWART TITLE GUARANTY COMPANY; FIRST AMERICAN TITLE CO.; and DOES 1 through 50, INCLUSIVE,<br><br>        Defendants. | CIVIL No. 16-00666 LEK-KJM<br><br>(1) ORDER DENYING PLAINTIFFS LEONARD G. HOROWITZ AND SHERRI KANE'S MOTION FOR LEAVE TO FILE PROPOSED SECOND AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF [FRCP 15(a)(2)]; (2) FINDING AND RECOMMENDATION TO DISMISS THIS ACTION WITH PREJUDICE |

(1) ORDER DENYING PLAINTIFFS LEONARD G. HOROWITZ
AND SHERRI KANE'S MOTION FOR LEAVE TO FILE
PROPOSED SECOND AMENDED COMPLAINT FOR DAMAGES
AND OTHER RELIEF [FRCP 15(a)(2)]; AND (2) FINDING AND
RECOMMENDATION TO DISMISS THIS ACTION WITH PREJUDICE

Pro se Plaintiffs Leonard G. Horowitz ("Horowitz"), and Sherri Kane

("Kane") (collectively, "Plaintiffs") filed a Motion for Leave to File Proposed

Second Amended Complaint for Damages and Other Relief [FRCP Rule 15(a)(2)]

on February 26, 2018 ("Second Motion for Leave").  *See* ECF No. 82.  Defendant

Stewart Title Guaranty Company ("Stewart Title") filed its Opposition on March

22, 2018.  *See* ECF No. 87.  Defendant First American Title Co. ("First

American") also filed its Opposition on March 22, 2018.  *See* ECF No. 88.

Plaintiffs filed their Reply to Stewart Title's and First American's Oppositions on March 28, 2018, and March 29, 2018, respectively.  *See* ECF Nos. 90-91.

The Court elected to decide the Second Motion for Leave without a hearing pursuant to Local Rule 7.2(d).  *See* ECF No. 92.  After careful consideration of the memoranda, the relevant case law, and the record in this action, the Court DENIES Plaintiffs' Second Motion for Leave, and FINDS and RECOMMENDS that the district court dismiss this action with prejudice.

## I.  PROCEDURAL HISTORY

### A.  The First Amended Complaint

On January 4, 2017, Plaintiffs and Royal Bloodline of David ("Royal") filed an amended complaint ("FAC") alleging eleven counts against Stewart Title and First American (collectively, "Defendants") for acts related to a protracted litigation involving the alleged wrongful conversion of a property in Paho, Hawaiʻi ("the Property").  *See* ECF Nos. 4, 6-7.  Plaintiffs and Royal brought claims for: negligence; gross negligence; bad faith tort; fraud; unfair and deceptive trade practices, in violation of Hawaii Revised Statutes ("HRS") sections 480-2 and 481-3(a)(7); negligent infliction of emotional distress; violation of the Bank Holding Company Act, 12 U.S.C. § 1972(1) ("Anti-Tying"); tortious interference with prospective business advantage; breach of fiduciary duty; civil conspiracy; and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

2

§ 1962 ("RICO").  *See* ECF No. 39 at 6-7.  First American filed a Motion to

Dismiss Plaintiff's First Amended Complaint on January 17, 2017.  *See* ECF No.

19.  Stewart Title filed a Motion to Dismiss the First Amended Complaint on

January 20, 2017.  *See* ECF No. 23.

On June 30, 2017, the district court granted in part and denied in part both

First American and Stewart Title's respective motions to dismiss in its "Order

Granting in Part and Denying in Part:  (1) Defendant First American Title Co.'s

Motion to Dismiss "Motion to Amend as a Matter of Course [FRCP Rule

15(A)(1)(A)]; Amended Complaint for Damages against All Defendants" [ECF No

10] Filed on January 4, 2017; and (2) Defendant Stewart Title Guaranty Co.'s

Motion to Dismiss Motion to Amend as a Matter of Course [FRCP Rule

15(A)(1)(A)]; Amended Complaint for Damages, Filed January 4, 2017 [Dkt. 10]"

("June 30, 2017 Order").  *See* ECF No. 39.

In the June 30, 2017 Order, the district court found that:  (1) Plaintiffs could

not represent Royal in a pro se capacity and thus, any claims brought on behalf of

Royal by Plaintiffs must be dismissed without prejudice; (2) Plaintiffs' stated

claims improperly conflated First American and Stewart Title, which was

concerning to the district court because these entities each had different

relationships with Plaintiffs; (3) Plaintiffs could not bring any claims against First

American in their individual capacities because Plaintiffs had not explained how

3

they had acquired Royal's rights under the Commitment for Title Insurance issued by First American ("the Commitment"); (4) Plaintiffs could not bring any claims as individuals against Stewart Title because they were not "insured" under the January 23, 2004 title insurance policy on the Property issued by Stewart Title "(Title Insurance Policy)"; and (5) any argument that Plaintiffs' claims as individuals could go forward because they were winding up Royal was unavailing. *See* ECF No. 39.

In addition, the district court expressed that it had "a serious question as to whether or not Plaintiffs had any interest in the Property at the time" Plaintiffs executed the June 28, 2012 Quitclaim Deed, which transferred the Property from Royal to Plaintiffs. *Id*. at 13.  The district court also reasoned:  "While it is arguably possible that Plaintiffs could amend their Amended Complaint to state claims against First American and Stewart Title, Plaintiffs must first explain how they are covered by the respective policies, and set forth a cognizable claim for relief." *Id*. at 14.

The district court thus permitted Plaintiffs to file a second amended complaint by July 31, 2017.  *Id*.  The district court explicitly stated, however, that Plaintiffs had not been granted leave to add any new parties, claims, or theories of liability, and that if they desired to do so, they must file a motion for leave to

4

amend.  The district court also "call[ed] Plaintiffs' attention to [Federal Rule of Civil Procedure] 8" in crafting any second amended complaint.  *Id.*

On August 16, 2017, Plaintiffs filed a motion requesting an extension to file their amended complaint, which this Court granted, extending the deadline for Plaintiffs to file a second amended complaint to October 2, 2017.  *See* ECF No. 43.

B.  The Motion for Clarification

On September 11, 2017, Horowitz filed a "Motion for Clarification and Leave to File 'Motion for Declaratory Relief Under Exceptional Circumstances'" ("Motion for Clarification") on behalf of Royal, requesting clarification of the district court's June 30, 2017 Order, and leave to file a motion for declaratory relief.  *See* ECF No. 46.  The proposed motion for declaratory relief asked this Court to order Stewart Title to provide Royal legal counsel and to order Stewart Title to pay for the costs, attorneys' fees, and expenses incurred in defending title to the Property to date.  *Id.* at 8-9.

The Court issued its decision on the Motion for Clarification on November 22, 2017 ("November 22, 2017 Order").  *See* ECF No. 66.  This Court reiterated the district court's conclusion in its June 30, 2017 Order that Royal must be represented by an attorney pursuant to Local Rule 83.11, and that Horowitz could not file claims on behalf of Royal without assistance of licensed legal counsel.  *See* ECF No. 66 at 5-6.  The Court cautioned Horowitz that this Court would not

entertain any further motions filed on behalf of Royal by an individual that was not a licensed attorney. *Id*. at 6. In addition, this Court denied Horowitz's request for leave to file his proposed motion for declaratory relief, explaining to Horowitz that there was no operative complaint in the action and thus, there was no basis for ordering Stewart Title to pay any fees or provide Royal counsel. *Id*. at 7.

C. The First Motion for Leave to File Second Amended Complaint

On September 29, 2017, Plaintiffs and Royal filed a "Motion for Leave to File 'Second Amended Verified Complaint;' [FRCP Rule 15(a)(2)]" ("First Motion for Leave"), individually and on behalf of Royal. *See* ECF No. 53. This Court denied Plaintiffs' First Motion for Leave on December 14, 2017. *See* ECF No. 68.

First, this Court again explained to Plaintiffs that Horowitz could not represent Royal in any capacity. *Id*. at 7. Second, this Court found that Plaintiffs had failed to cure the defects identified by the district court in its June 30, 2017 Order, namely, Plaintiffs failed to explain how they were covered by the respective policies issued by the Defendants. *Id*. Recognizing, however, that Plaintiffs may have misunderstood the district court's June 30, 2017 Order, as reflected in their Motion for Clarification, and that Plaintiffs had filed their First Motion for Leave before the benefit of this Court's November 22, 2017 Order, the Court permitted Plaintiffs another opportunity to file a motion for leave to file amended complaint in their individual capacities. ECF No. 68 at 10-11.

6

The Court cautioned Plaintiffs, however, that Plaintiffs must explain how they as individuals, and not Royal, were the proper parties to bring the claims they were seeking to allege against the Defendants. *Id*. at 11. Second, the Court explained to Plaintiffs that any proposed amended complaint must set forth a cognizable claim for relief, and such complaint must comply with Federal Rule of Civil Procedure 8, to wit, Plaintiffs were required "to plead a short and plain statement of the elements of [their] claim, 'identifying the transaction or occurrence giving rise to the claim and the elements of a prima facie case.'" *Id*. at 11-12 (citing *Garcia v. IndyMac Bank, F.S.B*., No. 2:12-cv-02997-ODW (MANx), 2012 WL 1745782, at *1 (C.D. Cal. May 16, 2012) (quoting *Bautista v. Los Angeles Cty*., 216 F.3d 837, 840 (9th Cir. 2000)).

The Court also explained that factual elements of a cause of action must be organized and may not be scattered throughout the complaint. *Id*. at 12 (citing *Macedo v. Deutsche Bank Nat'l Trust Co*., No. 13-CV-3068-W(BGS), 2014 WL 1600497, at *3 (S.D. Cal. Apr. 17, 2014)). The Court reasoned that a complaint must give fair notice and state the elements of the claims plainly and succinctly. *Id* (citing *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). The Court also cautioned Plaintiffs that "[n]arrative ramblings, storytelling, and political gripings are not acceptable." *McHenry v. Renne*, 84 F.3d 1172, 1177-80 (9th Cir. 1996).

7

II.  PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT

On February 26, 2018, Plaintiffs filed their Second Motion for Leave, and attached a proposed second amended complaint ("SAC").  *See* ECF Nos. 82, 82-8. The SAC states that Horowitz is the "Overseer" and sole member of Royal, a Washington nonprofit corporation.  *See* ECF No. 82-8 at 7.  Kane is "Horowitz' domestic partner, business partner, Royal's scribe, and Royal's creditor by reason of work contracts."  *Id.* at 9.

Although difficult to follow, Plaintiffs appear to allege that C. Loran Lee ("Lee") solicited Horowitz to purchase the Property in 2003, but that unbeknownst to Plaintiffs, Lee's creditors, Phillip Maise ("Maise") and Didier Flament, had "encumbered the Property by suing Lee for concealing a federal lien for drug trafficking encumbering the Property."  *Id.* at 21.  The SAC alleges that Lee contacted Brenda Iaone ("Iaone"), an employee of Island Title Corporation ("ITC"), who served as the escrow servicer for the sale of the Property between Lee and Horowitz.  *See id.* at 22.  First American purchased ITC.  ECF No. 39 at 4 n.1; ECF No. 88 at 7.  Although Plaintiffs refer to both First American and ITC in their claims, for the purposes of analyzing the Second Motion for Leave, the Court refers only to First American, and not ITC.

On January 15, 2004, Horowitz and Lee entered into an agreement whereby Lee would loan Horowitz $350,000 to buy the Property ("Mortgage").  *See* ECF No. 82-9 (Promissory Note and Mortgage).  Plaintiffs allege that Iaone knew about several encumbrances on the Property, "Lee's criminal records, and Lee's practice of fraudulently transferring the Property to evade the federal lien by selling to Maise."  ECF No. 82-8 at 23.  Plaintiffs allege that, despite Iaone's knowledge of the encumbrances, Iaone failed to document them in an updated title search issued by First American on November 28, 2003 ("Title Search").  *See id.* at 26-27.  Plaintiffs also allege that Iaone was part of Lee's scheme to extort money from Horowitz.  *Id.* at 27.  In addition, Plaintiffs allege that, to commence closing on the Property, Iaone demanded that Horowitz sign an "illegal and tortious" tying agreement in connection with a valuable access roadway ("Remnant A") that Lee had promised to convey along with the Property.  *Id.* at 31.

On January 23, 2004, the Warranty Deed conveying the Property from Lee to Royal was recorded in the State of Hawai'i Bureau of Conveyances.  *See* ECF No. 82-9.  Plaintiffs contend that in May of 2009, Lee and attorney Paul Sulla ("Sulla") altered documentation and evaded notices to release the Mortgage, which Plaintiffs allege Horowitz fully paid.  ECF No. 82-8 at 33.  Plaintiffs allege that Lee assigned the fully paid-off Mortgage to an entity named the "Gospel of Believers" ("GOB").  *Id.*  Plaintiffs assert that Sulla certified and administered the

9

allegedly fraudulent assignment of the Mortgage and Note. *Id.* Plaintiffs contend

that these facts were raised with Stewart Title, but that they refused "to provide

legal or financial aid, neglecting their duties in breach of the Policy." *Id.*

Plaintiffs allege that on March 19, 2010, Sulla served a notice of non-

judicial foreclosure on Royal on behalf of GOB, and that on April 20, 2010, Sulla

conducted the non-judicial foreclosure. *Id.* Plaintiffs allege that Sulla then

quitclaimed the Property to GOB on May 11, 2010. *Id.* at 34. The Property was

later quitclaimed from GOB to Jason Hester ("Hester"), the "Overseer" of GOB, in

June of 2011. *Id.* Plaintiffs contend that in 2016, Sulla secretly incorporated a

shell corporation, Halai Heights, LLC, and that Sulla directed Hester to sign over

Hester's interest in the Property to Halai Heights, LLC. *Id.* at 36.

Plaintiffs contend that Royal filed a claim with Stewart Title for legal aid in

defending the Property against Sulla's fraudulent assignments. *Id.* Plaintiffs assert

that in January of 2012, Stewart Title denied Plaintiffs' claims. On June 28, 2012,

Royal quitclaimed its interest in the Property to Horowitz and Kane in anticipation

of Royal's dissolution from insolvency. ECF No. 82-8 at 34; ECF No. 82-9 at 34.

Royal dissolved from insolvency on September 17, 2012. ECF No. 82-8 at 8.

Plaintiff alleges the following counts in the proposed SAC: negligence;

gross negligence; bad faith tort; fraud; unfair and deceptive trade practices, in

violation of HRS sections 480-2 and 481-3(a)(7); negligent infliction of emotional

10

distress; Anti-Tying; tortious interference with prospective business advantage;

breach of fiduciary duty; civil conspiracy; and violation of RICO.

## III.  DISCUSSION

"[T]he grant or denial of an opportunity to amend is within the discretion of

the District Court."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Normally, when

a viable case may be pled, a district court should freely grant leave to amend."

*Cafasso,* 637 F.3d 1047, 1058 (citation omitted).  Liberality in granting leave to

amend must be restrained, however, by the Court's consideration of a number of

factors, including "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment,

[and] futility of amendment" (collectively, "*Foman* factors").  *Foman*, 371 U.S. at

182.  Each factor is not, however, "given equal weight."  *Bonin v. Calderon*, 59

F.3d 815, 845 (9th Cir. 1995).  Futility alone can justify the denial of a motion for

leave to amend.  *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

In addition to the *Foman* factors, a court may consider judicial economy and

whether amendment would lead to expeditious disposition of litigation on merits.

*Chitimacha Tribe of La. v. Harry L. Laws Co*., 690 F.2d 1157, 1163 (5th Cir.

1982); *see also Millar v. Bay Area Rapid Transit Dist*., 236 F. Supp. 2d 1110, 1113

(N.D. Cal. 2002) (listing in addition to the *Foman* factors, "the impact on judicial

economy, judicial resources and the Court's ability to manage cases and control its dockets" as factors supporting denial of leave to amend). A court should thus "temper the [rule] favoring freely granting leave to amend with consideration of the ability of the district court to manage the case adequately if amendment is allowed." 3-15 Moore's Federal Practice - Civil § 15.15 (2015). A court may deny leave when permitting leave would prejudice the judicial system and the public's interest in prompt resolution of disputes. *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992).

The Court has carefully reviewed the Second Motion for Leave. As further discussed in this Order, based on Plaintiffs' failure to comply with Federal Rule of Civil Procedure 8, repeated failure to cure deficiencies by amendments previously allowed, considerations of judicial economy, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment, the Court DENIES the Second Motion for Leave, and FINDS and RECOMMENDS that the district court dismiss this action with prejudice.

A.  The Deficiencies in Plaintiffs' SAC

Plaintiffs' proposed SAC fails to comply with Federal Rule of Civil Procedure 8. Rule 8(a) provides in relevant part that a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Rule 8(e)(1) states that "[e]ach

allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  "Taken

together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and

brevity by the federal pleading rules."  *In re Westinghouse Sec. Litig.*, 90 F.3d 696,

702 (3d Cir. 1996) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal

Practice and Procedure § 1217 at 169 (2d ed. 1990)).  Accordingly, "[d]irectness

and clarity are mandatory."  *Lagmay v. Nobriga*, No. CV 16-00408 DKW/KJM,

2016 WL 4975198, at *3 (D. Haw. Sept. 16, 2016).

In addition, "[a] cognizable complaint 'must give fair notice' of the alleged

wrong 'and state the elements of the claim plainly and succinctly.'"  *Id.* (quoting

*Pickard v. WMC Mortg. Corp.*, 2009 WL 3416134, *3 (E.D. Cal. Oct. 21, 2009)

(citing *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984)).  "That is,

a court and the defendants should be able to read and understand a complaint

within minutes."  *Id.*  Such is not the case here.

 First, Plaintiffs' 100-page SAC with its ensuing 114-page index is verbose,

confusing, and difficult to follow.  Plaintiffs list every perceived wrongdoing that

has happened to them from 2003 to 2017.  The SAC is argumentative and

conclusory, containing facts that are largely irrelevant to Plaintiffs' claims.

For example, Plaintiffs insist Kane is a "co-successor-in-interest" with

Horowitz and is a proper plaintiff with Horowitz because Royal owes a debt to

Kane, and by "subrogation."  *Id.* at 9, 14.  This claim is confusing and appears to

lack any basis in the law.  Plaintiffs illogically rely on the Tort Claims Act for their subrogation claims, asserting, "[s]ubrogation claims should not be excluded from suit in the name of the subrogee under the Tort Claims Act." *Id*. at 15 (quoting in *United States v. Aetna Cas. & Sur. Co*., 338 U.S. 366, 372 (1949)).  Plaintiffs also claim, "Stewart [Title] is liable for Horowitz's claims by operation of the Tort Claims Act where liability exists in favor of Horowitz and Kane because of the winding up and dissolution under duress, and virtual 'death' of Royal, the original co-insured." *Id*.

The Tort Claims Act permits private parties to sue the United States in federal court for torts committed by person acting on behalf of the United States. *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1845 (2016) ("The Federal Tort Claims Act (FTCA) allows plaintiffs to seek damages from the United States for certain torts committed by federal employees.").  Plaintiffs offer no basis for applying the Tort Claims Act in this action.  This Court has yet to comprehend how Horowitz is entitled to any relief from Defendants, let alone Kane, when there are no facts suggesting she is entitled to subrogation.

The remainder of the SAC provides no respite from the confusion of the previous pages.  Plaintiffs redundantly refer to Lee and his "criminal record" and "fraudulent" transfers and concealments.  Plaintiffs frantically refer to various events, state and federal criminal and civil cases, names, and dates, making it

14

difficult for the Court to discern the nature of Plaintiffs' claims. In fact, a majority of their claims are directly related to Lee and Sulla's actions, not Defendants.

When Plaintiffs do refer to Defendants, the allegations are almost entirely conclusory and argumentative, *e.g.*, "[Stewart Title] is bound by the Policy and circumstances to fully investigate its insured's claims and not simply look to see if there is some superficial (and self-serving) basis to avoid pursuing the potential claims." ECF No. 82-8 at 16; *see also* 82-8 at 12 ("[Stewart Title's] bad faith caused Royal to commence winding up for dissolution."); *id*. at 18 ("Title remains validly vested in the insureds-Royal, Horowitz and Kane-and [Stewart Title] owes a duty to the Plaintiffs thereby, and has neglected its duty quite obviously."); *id*. at 28 (arguing that it was Defendants' duty to report Lee's crimes to authorities").

The SAC can only be described as a narrative rambling detailing every gripe Plaintiffs have with Lee and Sulla, accusing them of fraud, "hoodwinking," and extortion. From this Court's view, the allegations in the SAC are primarily against Lee and Sulla, not Defendants. It appears from Plaintiffs' own claims that they lost the Property because Lee failed to deliver the release of the Mortgage and instead, had Sulla unlawfully foreclose on the Property. Plaintiffs nonetheless insist, without any basis in law or fact, that it was Defendants' duty to save them from purchasing the Property and thereafter, defend Plaintiffs' title against Lee and Sulla.

15

Both the district court and this Court have warned Plaintiffs that they must

comply with Rule 8.  This Court explicitly advised Plaintiffs in its December 14,

2017 Order that their previous complaint consisting of 104 pages and exhibits

totaling nearly 200 pages was "riddled with narrative ramblings and storytelling."

ECF No. 68 at 13.  The Court was clear that the statements in the previously

proposed complaint were confusing and meandering.  *Id*.  The Court explained to

Plaintiffs the importance of crafting a succinct complaint:

> "it is not the Court's job to laboriously search the Complaint for
> factual assertions that could, in theory, be used to support one legal
> claim or another. . . .  [J]udges are not archaeologists.  They need not
> excavate masses of papers in search of revealing tidbits."  *Nw. Nat'l
> Ins. Co. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994). . . .  "Experience
> teaches that, unless cases are pled clearly and precisely, issues are not
> joined, discovery is not controlled, the trial court's docket becomes
> unmanageable, the litigants suffer, and society loses confidence in the
> court's ability to administer justice."  *Bautista*, 216 F.3d at 841
> (citation omitted).

*Id*. at 14.  This Court also cautioned Plaintiffs that this Court would recommend

dismissal if they failed to follow the instructions detailed in its Order.  *Id*. at 15.

This proposed SAC is nonetheless no less confusing than the previous

proposed complaint.  It is distracting and unintelligible.  The garrulity of the SAC

makes it extremely difficult to ascertain how Plaintiffs are insured under the Title

Insurance Policy and how Defendants are responsible in any way for Plaintiffs'

loss of title to the Property.  The proposed SAC is thus, "patently verbose,

16

confusing, and rambling." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) ("Dismissal for failure to meet the standards in Rule 8(e) is appropriate only in limited circumstances where a complaint proves patently verbose, confusing, and rambling.").

Prolix, confusing complaints such as the one Plaintiffs have filed in this case "impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179. "As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one [P]laintiffs filed, and must prepare outlines to determine who is being sued for what." *Id*. The time that this Court has spent on Plaintiffs' SAC prejudices the rights of other litigants "awaiting their turns to have other matters resolved." *Id*. at 1180. As explained by the Ninth Circuit, "[s]omething labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Id*.

This Court finds that, based on Plaintiffs' repeated failure to produce a legally sufficiently complaint, *i.e*., a complaint that complies with Rule 8, denial of Plaintiffs' request for leave is necessary for the sake of judicial economy and fairness to Defendants. *See Hearns v. San Bernardino Police Dept*., 530 F.3d 1124, 1136 (9th Cir. 2008) ("We have for decades upheld dismissals with

prejudice of needlessly prolix and confusing complaints, after plaintiff failed to take advantage of an invitation to cure the defects in an amended complaint."); *Jacobson v. Schwarzenegger*, 226 F.R.D. 395, 397-98 (C.D. Cal. 2005) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985) (holding that it was not an abuse of discretion to dismiss complaint that, with attachments, exceeded 70 pages in length, was confusing and conclusory, and not in compliance with Rule 8.); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (affirming dismissal of amended complaint consisting of 23 pages and 24 pages of addenda, which was as verbose, confusing and conclusory as the original 48 page complaint); *Carrigan v. Calif. State Legislature*, 263 F.2d 560, 566-67 (9th Cir. 1959), *cert. denied*, 359 U.S. 980 (1959) (holding that a complaint containing 150 pages describing plaintiff's thoughts, worries, hearsay conversations, letters, and "difficulties and frustrations with doctors, the insurance company, and most everyone else with whom she was in contact" violated Rule 8(a)).

B.  Plaintiffs' Claims

Notwithstanding Plaintiffs' repeated failure to comply with Rule 8(a) and Rule 8(e), which alone are sufficient to deny leave to amend, the Court nonetheless proceeded to carefully analyze each of Plaintiffs' claims.  Suspending the issue of the statute of limitations for the purposes of analyzing the allegations in the Second

Motion for Leave on the merits, the Court finds that permitting the amendment

would nonetheless be futile.

"[A] proposed amendment is futile only if no set of facts can be proved

under the amendment to the pleadings that would constitute a valid and sufficient

claim or defense." *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1393 (9th Cir.

1997). "When a court denies leave to amend on the ground of futility, it means

that the court has reached the legal conclusion that the amended complaint could

not withstand a Rule 12(b)(6) motion." *Ill. Nat. Ins. Co. v. Nordic PLC Const.,*

*Inc.*, No. CIV. 11-00515 SOM-KSC, 2013 WL 1337007, at *5 (D. Haw. Mar. 28,

2013). "Thus, the 'proper test to be applied when determining the legal sufficiency

of a proposed amendment is identical to the one used when considering the

sufficiency of a pleading challenged under Rule 12(b)(6).'" *Nordyke v. King*, 644

F.3d 776, 788 n.12 (9th Cir. 2011) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d

209, 214 (9th Cir. 1988)).

For a complaint to survive a Rule 12(b)(6) motion to dismiss, "the non-

conclusory 'factual content,' and reasonable inferences from that content, must be

plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

*Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant has

acted unlawfully is not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely

19

consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'") (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.

　　1.  Negligence

　　First, Plaintiffs contend that First American's "conduct of escrow services

was below the standard of care due to negligence."  ECF No. 82-8 at 38.  Plaintiffs

list a slew of allegations about First American's negligence, including allegations

that First American failed to search for existing encumbrances, inform Plaintiffs

about Lee's "criminal conviction for marijuana trafficking from the Property" and

other fraudulent activities, neglected to enforce the terms of the Purchase Contract

for the Property between Horowitz and Lee, the County of Hawaii's contract with

Lee "pursuant to that 0.89 +/- acre Remnant A roadway," neglected to secure and

issue a valid Warranty Title, and failed to secure and warrant a marketable title.

*See Id.* at 38-41.

　　Plaintiffs fail entirely, however, to allege how First American's duty to

Plaintiffs arose, how any of its actions constitute a breach of that duty, and how

First American's actions caused Plaintiffs' "dispossession" of the Property.  For

example, Plaintiffs claim that First American had a duty to "secure and issue a

20

valid Warranty Title." *Id*. at 40.  First American was the escrow servicer for the purchase of the Property.  Accordingly, the Court does not understand why First American had a duty to issue valid title to the Property.  Nor can the Court understand why First American had a duty to inquire about Lee's criminal record.

Second, Plaintiffs allege First American neglected:  the known litigation encumbrance on Title filed by Maise; the required access to the Property-the Remnant A roadway connecting the State highway to the Property-as cited in the DROA contract; the County Council's agreement with Lee to convey the Remnant A ownership to the 049 owner to permit neighboring land-locked lot owners access to their properties; the financial encumbrance on the 049 title to pay the County for the Remnant A conveyance as Seller Lee had contracted; the encumbrance on the 049 title whereby the owner would need to pay maintenance fees for the Remnant A access road; and the County of Hawaii's contract with Royal confirmed by Gerald Takase to convey title to Remnant A to Royal to connect the state highway to the Property.  Plaintiffs never explain, however, what First American neglected to do with regard to these agreements and encumbrances, or why First American was responsible for any of the foregoing.

Plaintiffs' allegations are entirely conclusory and raise only a "sheer possibility" that First American acted unlawfully.  Nothing in this section is even plausibly suggestive of a claim entitling the Plaintiffs to relief.

Plaintiffs' negligence claims against Stewart Title are no less deficient.
Plaintiffs contend that Stewart Title was negligent because it failed to make sure
title was free and clear, marketable, and afforded right of access to and from land.
*Id*. at 41-42.  Plaintiffs also allege Stewart Title failed to pay the costs, attorneys'
fees, and expenses incurred in defense of the title, to disclose encumbrances,
defend and secure the Property's marketability, and to thoroughly investigate facts
and evidence of Lee and Sulla's "pattern and practice of forging and foreclosing by
fraud."  *Id*. at 43.  All of these allegations are conclusory.

Plaintiffs fail to allege how Stewart Title's duty arose and how its failures
were violations of that duty.  Plaintiffs allege Stewart Title's duty to pay the costs
and attorneys' fees incurred in defending the title arose from the Title Insurance
Policy; however, such a duty would be contractual and not an action rooted in tort.
Plaintiffs nonetheless allege a string of Stewart Title's "duties," but fail to
elucidate for the Court whether these duties are pursuant to the Title Insurance
Policy or another standard.

Finally, Plaintiffs fail to explain how Defendants' negligence caused their
injury, *i.e.* the loss of the Property.  The law "does not hold a defendant liable for
every possible result of his or her conduct."  *O'Grady v. State*, 140 Haw. 36, 44,
398 P.3d 625, 633 (2017).  "[T]he causal sequence resulting from a single action
could theoretically continue indefinitely and particular policy concerns weigh in

22

favor of limiting liability under certain circumstances." *Id.* Hawai'i state law thus requires "a plaintiff to prove that the defendant's conduct was the legal cause" of the plaintiff's injuries as one of the prima facie elements of negligence. *Id.* at 43, 398 P.3d at 632. "Legal cause" or proximate cause, as it is often referred, "refers to a cause that is legally sufficient to result in liability." *Id.*

As explained previously, it appears that Plaintiffs are alleging that Lee's failure to release the Mortgage caused Plaintiffs to lose the Property. There is simply no factual content to allow this Court to draw the reasonable inference that Defendants' negligence, even if proven, caused Plaintiffs to lose the Property. Without causation, Plaintiffs' negligence claims fail. Plaintiffs fail to state a claim for negligence against Stewart Title or First American. Accordingly, permitting the negligence claims against Defendants would be futile. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend.").

2. Gross Negligence

Plaintiffs' gross negligence claims against Defendants largely repeat the allegations in their negligence claims. For the reason stated in the previous negligence section, the Court finds that permitting Plaintiffs to allege gross negligence against Defendants would be futile.

23

3.  Bad Faith Against Stewart Title

Under Hawaiʻi law, "an insurer may face liability under a bad faith tort

action if it 'fails to deal fairly and in good faith with its insured by refusing,

without proper cause, to compensate its insured for a loss covered by the policy.'"

*Best Place, Inc. v. Penn Am. Ins. Co*., 82 Haw. 120, 132, 920 P.2d 334, 346 (1996)

(quoting *Gruenberg v. Aetna Ins. Co*., 510 P.2d 1032, 1037 (Cal. 1973)).  An

unreasonable delay in payment of benefits will warrant recovery for compensatory

damages under Hawaiʻi law; however, "conduct based on an interpretation of the

insurance contract that is reasonable does not constitute bad faith."  *Id*. at 133, 920

P.2d at 347.

Plaintiffs' allegations regarding Stewart Title's "bad faith" are entirely

conclusory and argumentative.  Plaintiffs do not explain which provision of the

Title Insurance Policy that Stewart Title violated or how its actions constitute "bad

faith," *i.e*., unfair dealing under the law.  *Id*. (holding that an erroneous decision

not to pay a claim for benefits due under a policy does not by itself justify an

award of compensatory damages; rather, the decision not to pay a claim must be in

"bad faith") (citing *Cal. Shoppers Inc. v. Royal Globe Ins. Co*., 221 Cal. Rptr. 171

(1985) (holding that bad faith implies unfair dealing rather than mistaken

judgment)).  Nothing in the proposed SAC allows this Court to draw the

reasonable inference that Stewart Title acted in bad faith and unfair dealing when it

24

denied Plaintiffs coverage under the Title Insurance Policy. Plaintiffs do not cite

to a single sentence in the Title Insurance Policy indicating that Stewart Title had

the duty to provide coverage for the harms Plaintiffs are alleging.

Stewart Title contends that it denied coverage because neither Horowitz nor

Kane were entitled to coverage under the Title Insurance Policy. *See* ECF No. 87

at 14. Citing to a number of persuasive authorities, Stewart Title argues that, to

qualify as a distribution or conveyance by "operation of law," an entity must first

dissolve for the transferees to qualify as successors in interest by operation of law.

*Id*. Royal quitclaimed its interest in the Property to Horowitz and Kane on July 11,

2012. Royal then dissolved two months later on September 17, 2012. The Court

finds that Stewart Title's conduct was based on an interpretation of its Policy that

was reasonable and thus, does not constitute bad faith. Accordingly, Plaintiffs bad

faith claim against Stewart Title is futile.

4. Fraud by Defendants

Plaintiffs allege fraud against both First American and Stewart Title.

Plaintiffs' claims against both Defendants are conclusory and fail to allege facts

sufficient to support a fraud claim.

To begin, the Court discusses the necessary requirements of alleging the tort

of fraud. First, "[l]iability for fraud, as for other torts, requires proof of duty,

breach of duty, causation, and damages." *Exotics Hawaii-Kona, Inc. v. E.I. Du*

25

*Pont De Nemours & Co*., 116 Haw. 277, 298, 172 P.3d 1021, 1042 (2007) (citing

*Hong v. Kong*, 5 Haw. App. 174, 181, 683 P.2d 833, 840 (Ct. App. 1984) ("[f]raud

is a common-law tort"); *Von Holt v. Izumo Taisha Kyo Mission of Haw.*, 42 Haw.

671, 722 (Terr. 1958) ("Fraud in its generic sense, especially as the word is used in

courts of equity, comprises all acts, omissions[,] and concealments involving a

breach of legal or equitable duty and resulting in damage to another." (internal

quotation marks and citation omitted), *overruled on other grounds by State v.

Pauline*, 100 Haw. 356, 60 P.3d 306 (2002)).

Second, under Hawaiʻi law, a party claiming fraud must establish that (1)

false representations were made by defendants, (2) with knowledge of their falsity

(or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's

reliance upon these false representations, and (4) plaintiff did rely upon them.

*Shoppe v. Gucci Am., Inc*., 94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000) (citations

omitted).  "To be actionable, the alleged false representation must relate to a past

or existing material fact and not the occurrence of a future event."  *Id*. (citations

omitted).

Finally, "[Federal Rule of Civil Procedure] Rule 9(b) requires a party

asserting a claim involving fraud to 'state with particularity the circumstances

constituting fraud[.]'"  *Id*. (quoting Fed. R. Civ. P. 9(b)).  "The claim must 'be

accompanied by the 'who, what, when, where, and how' of the misconduct

26

charged.'"  *Id.* (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) (internal citation and quotation marks omitted)).

Plaintiffs' fraud allegations do not meet the requirements set forth above. Plaintiffs allege that First American made a number of false representations, including representations regarding:  the "riskiness" of withdrawing funds early from escrow; the Property's marketability; the effect of the "tying agreement" drafted by First American's counsel; and access to the Property secured by the "tying arrangement."  ECF No. 82-8 at 54.  Plaintiffs then make a number confusing allegations about Iaone's knowledge of the aforementioned alleged falsities made by First American, including assertions that the tying agreement was illegal, that Lee was untrustworthy and a "convicted felon who had repeatedly defrauded previous buyers."  *Id*. at 55.

Plaintiffs next include bare assertions that they relied on these false representations and that these falsities resulted in damages, namely, "costly lawsuits, severely distressing Horowitz and Kane, ultimately bankrupting Horowitz, destroying Horowitz's family, destroying Royal financially, causing Royal's dissolution, and causing Kane to suffer two heart attacks, medical, and emotional severe distress."  *Id*. at 56.  Plaintiffs' allegations are conclusory and fail to state a fraud claim under Hawai'i law and fail to meet the heightened pleading standard under federal law.

27

First, Plaintiffs fail to allege what First American or Iaone's duty was to Plaintiffs, how that duty arose, how First American's actions were a breach of that duty, and how its alleged false representations caused Plaintiffs' damages. The Court is left to speculate on the existence of all of these basic elements of the tort of fraud.

Second, Plaintiffs' allegations raise only a sheer possibility that First American acted unlawfully. The pleaded content simply does not allow this Court to draw the reasonable inference that the First American is liable for Plaintiffs' injuries. Each allegation is entirely conclusory, and is not plausibly suggestive of a claim entitling Plaintiffs to relief. For example, Plaintiffs claim that First American made false representations before the Property was transferred to Plaintiffs, and that Plaintiffs' reliance on these falsities bankrupted and destroyed Horowitz's family and caused Kane to suffer two heart attacks. These allegations are arguably possible, but not plausible. Plaintiffs' allegations simply do not establish that Plaintiffs' reliance on a handful of representations made by First American directly caused these severe damages.

Finally, Plaintiffs' allegations fail to meet the heightened requirements of Federal Rule of Civil Procedure 9(b). Some of the purposes served by Rule 9(b) are "to provide defendants with adequate notice to allow them to defend the charge[,] . . . to protect those whose reputation would be harmed as a result of

being subject to fraud charges[,]" and to prohibit plaintiffs from "unilaterally

imposing upon the court, the parties and society enormous social and economic

costs absent some factual basis." *Kearns*, 567 F.3d at 1125 (citations omitted).

Rule 9(b) thus "demands that the circumstances constituting the alleged fraud be

specific enough to give defendants notice of the particular misconduct . . . so that

they can defend against the charge and not just deny that they have done anything

wrong." *Id*. at 1124 (citations omitted) (internal quotations omitted) (alterations in

original).

Plaintiffs' fraud claim fails to provide facts specific enough to give First

American notice of its alleged misconduct. Indeed, Plaintiffs' allegations set forth

neutral facts identifying the transaction and nothing more. *Id*. ("A party alleging

fraud must 'set forth more than the neutral facts necessary to identify the

transaction.'" (quoting *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir.

1994), *superseded by statute on other grounds*). The Court is left to speculate on

whether the allegedly fraudulent misrepresentations were indeed representations

related to a past or existing material fact and not the occurrence of a future event.

Plaintiffs' allegations against Stewart Title are equally deficient. Plaintiffs

allege that Stewart Title falsely represented that: Royal was no longer insured

because the Property had been foreclosed upon and conveyed to Hester; Plaintiffs'

claim arose out of the Mortgage, which is specifically excluded from coverage

29

under the Title Insurance Policy; Stewart Title owed no duty to Plaintiffs because

neither Horowitz nor Kane were named insureds under the Title Insurance Policy;

Stewart Title could not disclose the Maise litigation encumbrance because it had

not been recorded in the Bureau of Conveyances; recording in the Bureau of

Conveyances was the statutory means for imparting constructive notice in Hawaiʻi;

and Sulla had foreclosed on Royal's interest in the Property and the Title Insurance

Policy in April of 2010.  ECF No. 82-8 at 57-58.  In addition, Plaintiffs allege that

defense counsel for Stewart Title fraudulently omitted a judicial foreclosure ruling

in Plaintiffs' favor to "deceive and prejudice the court."  *Id*. at 58.

      None of these allegations demonstrate that any of Stewart Title's

representations were indeed false.  Plaintiffs do not cite to a single fact refuting the

truthfulness of Stewart Title's representations.  Plaintiffs' disagreement with

Stewart Title's representations does not establish that Stewart Title made false

representations to Plaintiffs.  The Court finds that Plaintiffs' fraud claim against

both Defendants is futile.

      5.  Unfair and Deceptive Trade Acts or Practices Against Defendants

      Plaintiffs allege that First American violated HRS sections 480-2 ("UDAP")

and 481-3(a)(7).  Plaintiffs allege that First American committed fraudulent acts

and engaged in a pattern and practice of fraudulent concealments.  *See* ECF No.

30

82-8 at 62.  Because Plaintiffs allege fraudulent business practices, Plaintiffs

allegations must be pled with peculiarity.

"A UDAP claim alleging fraudulent business practices must be pled with

particularity, pursuant to Federal Rule of Civil Procedure 9(b)."  *Lizza*, 1 F. Supp.

3d at 1121.  As explained in the previous section, "Rule 9(b) requires a party

asserting a claim involving fraud to 'state with particularity the circumstances

constituting fraud[.]'"  *Id*. (quoting Fed. R. Civ. P. 9(b)).  "The claim must 'be

accompanied by the 'who, what, when, where, and how' of the misconduct

charged.'"  *Id*. (quoting *Kearns*, 567 F.3d 1120 (9th Cir. 2009) (internal citation

and quotation marks omitted)).

The allegations in Plaintiffs' UDAP claim are conclusory and confusing, and

fail to meet the requirements of Rule 9.  Plaintiffs insist that First American

violated UDAP by "the unethical, oppressive, unscrupulous and substantially

injurious manner ITC administered escrow services damaging personal investor

Horowitz by acts of fraud and a pattern and practice of fraudulent concealments."

ECF No. 82-8.  This statement is argumentative and fails to demonstrate when and

how First American violated UDAP.  Plaintiffs' other allegations are no less

conclusory and argumentative.

A majority of Plaintiffs' UDAP claims involve Iaone.  Plaintiffs allege that

she violated UDAP "by neglecting Lee's extortion of January 6, 2004, neglecting

her duty to report the felony, and subsequently aiding-and-abetting the illegality by directing an illegal 'tying agreement.'" *Id*. at 63. Plaintiffs also point extensively to Iaone's involvement in a separate case in which she provided "deceptive testimony" causing Horowitz to be falsely adjudged as having committed Lee's alterations, and enabled Lee and Sulla to defame Horowitz. *Id*. at 65-66.

Plaintiffs fail to demonstrate that any of the conduct alleged by Plaintiffs is indeed a violation of UDAP. Plaintiffs' UDAP claim fails to discuss the elements of a UDAP claim or connect the elements of a claim to the facts pled. Plaintiffs' pleaded content does not allow this Court to draw the reasonable inference that First American is liable for violations under UDAP. The Court finds that Plaintiffs' UDAP claim is futile. *See Heejoon Chung v. U.S. Bank*, *N.A*., 250 F. Supp. 3d 658, 679 (D. Haw. 2017) ("Plaintiff does not allege a specific cause of action, discuss elements of a claim, or connect the elements of a claim to facts pled. . . . [T]his is inadequate, particularly given the heightened pleading standards required under Rule 9(b).").

Plaintiffs' UDAP claims against Stewart Title fail for the same reasons discussed above. Plaintiffs list a number of allegations against Stewart Title, ranging from allegations that it submitted "false and misleading court filings" to allegations that Stewart Title "aid[ed]-and- abet[ed] Sulla's theft scheme by remaining willfully blind to Sulla's illegal conversion of the Title by a void non-

judicial foreclosure." ECF No. 82-8 at 68. None of these claims are plausibly suggestive of a claim entitling Plaintiffs to relief under UDAP. The Court is unable to draw the reasonable inference that Stewart Title is liable for violating UDAP from any of the allegations. Accordingly, the Court finds that Plaintiffs' UDAP claim against Stewart Title is futile.

6. Negligent Infliction of Emotional Distress

As explained above, the Court finds that Plaintiffs fail to establish that Defendants engaged in any negligent conduct. Accordingly, Plaintiffs' negligent infliction of emotional distress claim, which requires Plaintiffs to prove that Defendants engaged in negligent conduct, also fails. The Court thus finds that Plaintiffs' negligent infliction of emotional distress claim is futile.

7. Anti-Tying Claim

Plaintiffs' Anti-Tying claims against First American appears to allege violations of the tying law under the Sherman Antitrust Act, 15 U.S.C. § 1, and the antitying provision of the Bank Holding Company Act of 1956, 12 U.S.C. § 1972.

First, a tying agreement under 15 U.S.C. § 1 is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958). This statute does not apply to any of the dealings between Plaintiffs and First American.

There is nothing in the proposed SAC that even alludes to the possibility of a violation of the Sherman Antitrust Act.  This claim is thus futile.

Next, 12 U.S.C. § 1972 simply does not apply here.  "A plaintiff must plead and prove three things to recover under the anti-tying provision of the Bank Holding Company Act, 12 U.S.C. § 1972(1)."  *Rae v. Union Bank*, 725 F.2d 478, 480 (9th Cir. 1984).  "First, the plaintiff must show that the banking practice in question was unusual in the banking industry.  Second, the plaintiff must show an anti-competitive tying arrangement. Third, the plaintiff must demonstrate that the practice benefits the bank."  *Id*.

First American is not a bank.  Moreover, Plaintiffs allege that Lee was essentially the "bank" at issue in this action.  *See* ECF No. 82-8 at 72 ("Lee was the 'bank' in this case, having supplied a $350,000 purchase money mortgage to Horowitz/Royal.").  Thus, the 12 U.S.C. § 1972 anti-tying claim Plaintiffs allege in this proposed SAC is against Lee, not First American.  Accordingly, Plaintiffs' anti-tying claim under 12 U.S.C. § 1972 against First American is futile.

8.  Tortious Interference with Prospective Business Advantage

Plaintiffs allege the intentional tort of tortious interference with prospective business advantage against First American.  *See* ECF No. 82-8 at 75.  Under Hawai'i law, a plaintiff must allege the following five elements to allege the intentional tort of tortious interference with prospective business advantage:

> (1) the existence of a valid business relationship or a prospective
> advantage or expectancy sufficiently definite, specific, and capable of
> acceptance in the sense that there is a reasonable probability of it
> maturing into a future economic benefit to the plaintiff; (2) knowledge
> of the relationship, advantage, or expectancy by the defendant; (3) a
> purposeful intent to interfere with the relationship, advantage, or
> expectancy; (4) legal causation between the act of interference and the
> impairment of the relationship, advantage, or expectancy; and (5)
> actual damages.

*Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 116, 148 P.3d

1179, 1218 (2006). Plaintiffs fail to establish these elements.

First, Plaintiffs allege that Lee and Horowitz/Royal had a valid business

relationship and that Iaone, First American's employee, knew of the relationship.

Even if this Court were to assume this allegation satisfies the first two elements of

Plaintiffs' claim, there is nothing in the proposed SAC that demonstrates that First

American, with purposeful intent, interfered with Plaintiffs' relationship with Lee.

Nor are there any facts evincing that (1) First American acted in a manner that

constitutes interference or impairment of the relationship between Lee and

Plaintiffs, and (2) any of First American's actions led to the loss of Plaintiffs'

Property.

On the contrary, the proposed SAC blames Lee and Sulla for the impairment

of the relationship between Plaintiffs and Lee, and Lee and Sulla for the loss of the

Property. *See* ECF No. 82-8 at 33 ("Sulla converted Lee's $200,907.54 judgment

debt owed Horowitz/Royal into a $350,000 'false debt' allegedly owed to

GOB/Hester (i.e., Sulla 'strawmen'), all the while evading notices to release the fully paid Mortgage."); ECF No. 82-8 at 59 ("[Stewart Title] received notice from Horowitz on multiple occasions that Royal's Notice to Release the Mortgage was repeatedly evaded by Lee/Sulla et. al. a year prior to Sulla's invalid [non-judicial foreclosure]."); ECF No. 82-8 at 86 (alleging that Sulla filed false filings with the State and forged documents, which resulted in Plaintiffs' ejectment from their Property).

The Court finds that there are no set of facts that can be proved under the proposed SAC that would constitute a valid and sufficient claim for tortious interference with prospective business advantage against First American. Accordingly, permitting Plaintiffs to allege this claim against First American would be futile.

### 9.  Breach of Fiduciary Duty

Plaintiffs claim that Iaone, First American's employee, breached her fiduciary duty to Horowitz/Royal "by conveying that $85,000 non-refundable deposit money from escrow 'early' without reasonably or properly informing Horowitz of certain risks in this transaction."  ECF No. 82-8 at 81-82.  Under Hawai'i law, the general rule is that, "the person who, in an escrow, and for compensation, receives, holds, and delivers the money, other consideration, or instrument affecting title to property," *i.e.*, the escrow depository, "occupies a

36

fiduciary relationship with the parties to the escrow agreement or instructions and must comply strictly with the provisions of such agreement or instructions." *DeMello v. Home Escrow, Inc*., 4 Haw. App. 41, 47, 659 P.2d 759, 763 (Ct. App. 1983). Accordingly, the escrow depository's duty is to strictly comply with the provisions of the applicable agreement or instructions.

Plaintiffs allege that Iaone breached her fiduciary duty to Plaintiffs when she failed to reasonably or properly inform Horowitz of certain risks in the transaction. ECF No. 82-8 at 81-82. Plaintiffs contend that "[e]thically, any reasonable escrow agent with a duty to prevent consumers from being defrauded and damaged could have, and should have, administered this transaction with more reasonable care and proper 'informed consent' from Horowitz before conveying the $85,000 non-refundable deposit money from escrow 'early.'" *Id*. at 82. Plaintiffs do not provide any support for this conclusory allegation or how Iaone's failure to obtain "informed consent" from Horowitz constitutes a breach of First American's fiduciary duties under the law.

Plaintiffs allege that Horowitz agreed to permit Lee to withdraw $85,000 from escrow early to pay off a high interest loan. Plaintiffs do not provide any support for their contention that it was First American's duty to disclose to Plaintiffs the fact that Lee needed the funds for his "felony conviction" or that the early withdrawal was necessary to clear title to the Property. Nothing in the

proposed SAC suggests that First American failed to follow instructions or an agreement between the parties.  Plaintiffs proposed SAC does not contain any non-conclusory facts that are plausibly suggestive of a claim entitling Plaintiff to relief.  Accordingly, Plaintiffs' breach of fiduciary duty claim against First American is futile.

      10.  Civil Conspiracy to Defraud and Gain Money and Property

      Plaintiffs' civil conspiracy allegations against First American and Stewart Title do not allow this Court to draw the reasonable inference that Defendants are liable for civil conspiracy.  First, "[t]he Hawai'i Supreme Court has defined civil conspiracy as the 'combination of two or more persons or entities by concerted action to accomplish **a criminal or unlawful purpose**, or to accomplish some purpose not in itself criminal or unlawful **by criminal or unlawful means**.'" *Miyashiro v. Roehrig, Roehrig, Wilson & Hara*, 122 Haw. 461, 482, 228 P.3d 341, 362 (Ct. App. 2010) (emphasis in *Miyashiro*) (quoting *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999), *superseded by statute on other grounds as stated in Haw. Med. Ass'n*, 113 Haw. 77, 148 P.3d 1179).

      Plaintiffs allege that Stewart Title conspired with First American "to steal Horowitz's money and/or Property."  ECF No. 82-8 at 87-88.  Plaintiffs allege that:  Defendants fraudulently concealed an illegal tying arrangement ordered by

38

First American/Iaone; Stewart Title willfully ignored Lee/Sulla's Property

conversion and money laundering scheme; Stewart Title withheld insurance

coverage to neglect or conceal First American's wrongdoing; Stewart Title

"conspired with Sulla to deprive the Plaintiffs of their civil rights and Property

rights by precluding adjudication on the merits and abusing the courts to drain the

Plaintiffs financially and emotionally." *Id*. at 88-89.

Even if this Court were to accept as true Plaintiffs' conclusory allegations,

with one exception, none of these actions demonstrate a concerted action "to

accomplish a criminal or unlawful purpose, or to accomplish some purpose not in

itself criminal or unlawful by criminal or unlawful means." *Miyashiro*, 122 Haw.

at 482, 228 P.3d at 362.  The sole exception is the allegation of a conspiracy to

steal Horowitz' money and/or Property, but this bare conclusory allegation falls

well short of establishing the requisite plausibility of entitlement to relief.  *See*

*Iqbal*, 556 U.S. 662, 678.  Plaintiffs fail to demonstrate that any of the alleged acts

were "criminal" or "unlawful."  The Court finds that Plaintiffs' civil conspiracy

claim is futile.

11.  Civil RICO

A civil RICO claim requires a showing of "(1) conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

causing injury to the plaintiff's 'business or property.'"  *Kerr v. Bank of Am., N.A.*,

39

No. 3:15-CV-00306-MMD-WGC, 2016 WL 5107069, at *3 (D. Nev. Sept. 19,

2016), *aff'd*, 710 Fed. Appx. 321 (9th Cir. 2018) (quoting *Grimmett v. Brown*, 75

F. 3d 506, 510 (9th Cir. 1996) (quoting 18 U.S.C. §§ 1964(c), 1962(c); *Sedima*,

*S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985)). "The RICO statute

provides a list of crimes or acts that qualify as 'racketeering activity' and requires

two or more acts to establish a 'pattern of racketeering activity.'" *Id*. (quoting 18

U.S.C. § 1961).

Plaintiffs allege a civil RICO claim against both Defendants. Plaintiffs

allege that the "crimes" at issue in this action are deprivation of "Royal/Horowitz's

money and/or the subject Property by extortion (section 1951), collection of debt

by extortionate means (section 894), 'interference with commerce' (section 1951),

engaging in monetary transactions in property derived from a pattern of forged,

manufactured, and altered documents. (section 1957), mail fraud (section 1341)

and wire fraud (section 1343)." Plaintiffs also allege that Lee, First American,

Stewart Title, and Sulla, all committed fraudulent foreclosure and ejectment

actions against Royal, "compounding a pattern of white collar organized crime

aided-and-abetted by [First American] and later [Stewart Title's] willful

blindness." ECF No. 82-8 at 93. Plaintiffs thus allege that Defendants actions

constituted a pattern of racketeering.

"Allegations of fraudulent conduct that constitute a pattern of racketeering activity must satisfy Fed. R. Civ. P. 9(b)'s specificity requirements." *Kerr*, 2016 WL 5107069 at *3 (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007) (en banc); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400–01 (9th Cir. 1986)). "To satisfy Rule 9(b)'s requirements, the complaint 'must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Id*. (quoting *Schreiber Distrib.*, 806 F.2d at 401).

Plaintiffs' civil RICO allegations against Defendants are wholly insufficient. Plaintiffs' allegations are vague, conclusory, and do not contain any of the details required under Rule 9(b). Plaintiffs do not state the time, place, or specific content of the alleged false representations. Plaintiffs list only a number of conclusory allegations that fail to demonstrate that Defendants' conduct of an enterprise through a pattern of racketeering activity caused injury to Plaintiffs' business or Property. Moreover, the Court finds that there are no set of facts that can be proved under the proposed SAC that would constitute a valid and sufficient RICO claim against Defendants. Plaintiffs' civil RICO claim against Defendants is thus futile.

C.  Dismissal of This Action With Prejudice is Appropriate

Based on the history of Plaintiffs' attempts to amend their complaint, and the repeated failures to produce a complaint that states a claim upon which relief can be granted, this Court finds that permitting any further amendments would be an exercise in futility.  The Court finds that Plaintiffs are unable to save their complaint by any amendment and thus, DENIES Plaintiffs' Second Motion for Leave.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'") (quoting *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003)); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (affirming district court's denial of leave to amend because the complaint could not be saved by any amendment); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("A trial court may deny [a motion for leave to amend a complaint] if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit.").

In addition, this Court finds that Plaintiffs failed to sufficiently explain how they were covered by the respective policies, *e.g.* Plaintiffs failed to cite to any agreement between Plaintiffs and First American nor any provision in the Title

42

Insurance Policy indicating the coverage to which they were entitled, nor were they able to sufficiently set forth a cognizable claim for relief as required by the district court's June 30, 2017 Order. *See* ECF No. 39 at 14. Based on the district court's warning in the June 30, 2017 Order that the Plaintiffs' claims would be dismissed with prejudice if Plaintiffs failed to cure the defects identified in the June 30, 2017 Order, and this Court's finding that the complaint cannot be saved by any amendment, the Court FINDS and RECOMMENDS that the district court DISMISS this action WITH PREJUDICE. *See Id*. at 14-15 (cautioning that "if a claim in the second amended complaint fails to cure the defects identified in [the June 30, 2017 Order], that claim will be dismissed with prejudice"). *See Zucco Partners*, 552 F.3d at 1007  ("[T]he district court did not err when it dismissed the SAC with prejudice, since it was clear that the plaintiffs had made their best case and had been found wanting.") (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) (upholding a dismissal with prejudice where, among other things, the deficiencies at issue "persisted in every prior iteration of the[complaint]") (alterations in *Metzler*)); *Hearns*, 530 F.3d at 1136 ("We have for decades upheld dismissals with prejudice of needlessly prolix and confusing complaints, after plaintiff failed to take advantage of an invitation to cure the defects in an amended complaint."); *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1296 (9th Cir. 1998) ("[D]ismissal without leave to amend is improper

43

unless it is clear, upon de novo review, that the complaint could not be saved by

any amendment.") (alterations in *Steckman*) (quoting *Chang v. Chen*, 80 F.3d

1293, 1296 (9th Cir. 1996), *overruled on other grounds*).

## CONCLUSION

The Court DENIES Plaintiffs' Motion for Leave to File Proposed Second

Amended Complaint for Damages and Other Relief [FRCP Rule 15(a)(2)] filed on

February 26, 2018.  The Court FINDS and RECOMMENDS that the district court

DISMISS this action WITH PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 3, 2018.



   /S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge


CIVIL No. 16-00666 LEK-KJM; Horowitz, et al. v. Stewart Title Guaranty Company, et al; (1) ORDER DENYING PLAINTIFFS LEONARD G. HOROWITZ AND SHERRI KANE'S MOTION FOR LEAVE TO FILE PROPOSED SECOND AMENDED COMPLAINT FOR DAMAGES AND OTHER RELIEF [FRCP 15(a)(2)]; (2) FINDING AND RECOMMENDATION TO DISMISS THIS ACTION WITH PREJUDICE